FILED '10 DEC 6 12:00 USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CIRCLE K STORES INC., a Texas                    Civ. No. 10-6389-AA
corporation,
                                                 OPINION AND ORDER
          Plaintiff,

     v.

RICHARD L. ZILLMAN, trustee of
the RICHARD L. ZILLMAN FAMILY
TRUST,

          Defendant.
_____

AIKEN, Chief Judge:

     Plaintiff Circle K Stores Inc. (Circle K) filed suit seeking

declaratory and injunctive relief and specific performance, or in

the alternative, damages for breach of contract and breach of the

duty of good faith and fair dealing.  Circle K also moved for a

temporary restraining order (TRO) and preliminary injunction

enjoining defendant from interfering with Circle K's possession and

use of properties leased by Circle K and owned by defendant.  The

1    - OPINION AND ORDER

court granted Circle K's motion for TRO and entered temporary injunctive relief against defendant.  Defendant subsequently filed a motion to dissolve the TRO.

On December 1, 2010 the court heard oral argument on Circle K's motion for preliminary injunction.  Circle K's motion is granted and defendant's motion to dissolve is denied.

BACKGROUND

Circle K is in the business of operating convenience stores and fuel stations throughout the United States.

On November 27, 1970, Circle K and defendant's predecessors in interest entered into separate but identical lease agreements for two separate properties (the Leases).  Under the Leases, Circle K became a tenant and operated stores located at 4781 Liberty Road SE, Salem, Oregon and 2904 12th Street SE, Salem Oregon (the Leased Premises).

The original term under the Leases was twenty years, ending on November 26, 1990.  The Leases granted Circle K renewal options at the end of their terms, in that Circle K had a "right of first refusal" with respect to future negotiations of rental terms. Wilson Decl., Ex. A, pp. 1, 6.  The Leases also granted Circle K an "exclusive first option to purchase or lease" should defendant desire to accept a bona fide offer from a potential third-party lessee.  Wilson Decl., Ex. A, p. 2.

Subsequently, Circle K and defendant entered into extension

agreements, with the Leases (as modified) extended an additional ten years through November 26, 2000. The extensions also provided Circle K with options to renew the Leases for two five-year periods. Circle K ultimately exercised the renewal options and the parties extended the lease terms through November 26, 2010.

On February 3, 2010, Circle K sent defendant a letter and requested a five-year extension of the Leases, with options to renew for two additional five-year periods after the expiration of the new extension. Defendant apparently never responded to Circle K's letter.

On July 20, 2010, Circle K again sent its February 3, 2010 letter to Defendant. Around the same time, defendant allegedly retained a broker to market the Leased Premises to third parties.

In late August 2010, Circle K stated its intent to exercise its "right of first refusal" on the Leased Properties. Wilson Decl., Ex. N, p. 1. Circle K maintains that defendant refused to engage in any meaningful negotiations to further extend the Leases or to execute a new lease agreement. Defendant disputes Circle K's characterization of the parties' communications.

In response to a demand from defendant's broker, in October 2010, Circle K provided independent broker price opinions for the Leased Premises.

On November 10, 2010, defendant's broker rejected Circle K's request for lease extensions and stated:

3   - OPINION AND ORDER

> [Defendant] has received recent offers that are
> significantly higher than that made by Circle K and at
> this time, [defendant] feel[s] a counter-proposal would
> be unproductive. As such they have decided to go another
> direction with these two locations.

Wilson Decl., Ex. P, p. 3. Later on November 10, 2010, defendant's
broker sent an e-mail to Circle K, stating:

> [Defendant is] not interested in discussing any
> continuation of your occupancy at either location, and
> [we] expect that you will be vacating the spaces on
> November 26th, 2010 per the terms of your existing lease.
> There is a new Lessee who may be interested in discussing
> acquisition of the FF&E within the stores to save you the
> expense and hassle of removing those items prior to you
> vacating.

Wilson Decl., Ex. P, p. 2.

In response to defendant's disclosure that it had received
other offers and potentially entered into lease agreements with a
new tenant, Circle K requested that defendant produce the third-
party leases pursuant to the terms of the Leases: "As per the
terms of our lease, we have a first right of refusal. Once this
[third-party offer] is presented to us for evaluation we will
either elect to exercise or vacate." Wilson Decl, Ex. P, p. 1.

On November 16, 2010, defendant disclosed two letters of
intent, each dated November 8, 2010 and signed by a third-party
lessee. However, defendant denied that Circle K had a right of
first refusal:

> These documents are being sent as an accommodation.
> Lessor does not acknowledge that Circle K has a valid
> First Right of Refusal. Any First Right that existed,
> expired 6 months prior to the expiration of the original
> lease term, in 1990.

4   - OPINION AND ORDER

Wilson Decl., Ex. Q, p. 1.

On November 17, 2010, Circle K attempted to exercise its claimed right of first refusal by accepting the terms offered by the third-party lessee in the November 8, 2010 letters of intent. Wilson Decl., Ex. R.

On November 18, 2010, Circle K filed this action and moved for temporary and preliminary injunctive relief. The court granted temporary injunctive relief enjoining defendant from forcing Circle K to vacate the leased premises by November 26, 2010 and leasing the property to a third party. The court also ordered defendant to show cause why a preliminary injunction should not issue.

After the court issued temporary injunctive relief, defendant disclosed to Circle K two leases for the Leased Premises executed with a third party on November 9, 2010.

DISCUSSION

Circle K moves for a preliminary injunction enjoining defendant from interfering with Circle K's rights in the Leased Premises, including but not limited to terminating Circle K's possession of the Leased Premises, interfering with Circle K's business on the Leased Premises, and executing any lease or sale of the Leased Premises inconsistent with Circle K's rights.

"A preliminary injunction is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 129 S.

5    - OPINION AND ORDER

Ct. 365 (2008). A plaintiff seeking a preliminary injunction must establish: 1) the likelihood of success on the merits; 2) the likelihood of irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in favor of a preliminary injunction; and 4) when relevant, that a preliminary injunction is in the public interest. Id. at 374; see also Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1021 (9th Cir. 2009). "[S]erious questions going to the merits and a hardship balance that tips sharply towards the plaintiff can support issuance of an injunction, so long as the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 622 F.3d 1045, 1053 (9th Cir. 2010) (quotation marks omitted).

Here, I find that Circle K establishes the likelihood of success on the merits and of irreparable harm, and that the balance of hardships tips in its favor.[1]

A. Likelihood of Success on the Merits

The crux of the parties' dispute is the meaning of three paragraphs contained in the original 1970 Leases and an accompanying Addendum. Circle K maintains that ¶ 17 of the Leases

---

[1]In this case involving contractual rights between private parties, the public interest is negligible, aside from the public interest involved in the enforcement of contracts generally and the interests of third parties such as Circle K employees and the third-party lessees. I find that an injunction serves such interests.

unequivocally grants Circle K the exclusive right to lease the properties on the same terms as those contained in a bona fide offer that defendant wishes to accept.  Based on the language of the Leases, I agree.

In ¶ 17, the Leases specifically grant Circle K the "exclusive" right to accept the terms of lease or purchase offers received by defendant:

> 17. OPTIONS TO PURCHASE OR LEASE: If the Lessor, *at any time during the term of this Lease or any renewal or extension thereof receives a bona fide offer to ... lease* (for a term to begin subsequent to the present term or any extension or renewal thereof) the demised premises and/or equipment and Lessor desires to accept said offer, Lessor agrees to give Lessee immediate notice in writing of such offer, setting forth name and address of the proposed purchaser or Lessee who has made the offer with a full disclosure of all terms and options thereof. *Lessee shall have the exclusive first option to purchase or lease the demised premises and/or equipment within fifteen (15) days after receipt of said notice on the same terms of any such proposal.* No sale, lease or transfer of title to said premises and/or equipment shall be binding on Lessee unless and until these requirements are fully complied with by Lessor.

Wilson Decl., Ex. A, p. 2 (emphasis added).

Notwithstanding the express language of ¶ 17, defendant argues that an Addendum to the 1970 Leases modified and essentially replaced ¶ 17, and thus any right of first refusal held by Circle K expired six months before the end of the first lease term in 1990. However, defendant's argument is belied by the plain language of the Leases and the Addendum and by the parties' subsequent extensions of the Leases.

7    - OPINION AND ORDER

The Addendum relied on by defendant is incorporated by reference into ¶ 3 of the Leases, a paragraph that discusses renewal options at the end of the original lease terms:

> 3.   TERM AND RENEWAL OPTION: . . .  Lessee shall have and is hereby granted a total of _ See Addendum _ successive options to extend the term of this lease for any period of time not exceeding five (5) years for each such option upon the same covenants and conditions as are herein provided. . . .

Rather than identify the number of successive renewal or extension options available to Circle K, the Addendum granted Circle K a "right of first refusal" to negotiate the renewal or extension of lease terms:

> 3.   RENEWAL OPTIONS: Lessee shall have the right of first refusal in any future negotiating on the renting of the lease premises at the end of the original term of this lease, said right of first refusal to expire six months prior to the end of the lease term.

Wilson Decl., Ex. A, p. 4.

Notably, ¶ 17 of the Leases does *not* reference or incorporate the Addendum.  Further, the Addendum is numbered "3" and labeled "RENEWAL OPTIONS," thus corresponding with ¶ 3, "TERM AND RENEWAL OPTION."  Further, while the Addendum uses the language "right of first refusal" when referencing future renewal negotiations, ¶ 17 describes an "exclusive first option to purchase or lease" when and if defendant receives a bona fide offer from a third party.  Thus, under the language of the Leases and the Addendum, the "right of first refusal" identified in the Addendum refers to Circle K's right to first negotiate and/or refuse a renewal or extension of

8    - OPINION AND ORDER

the Leases, not the "first option" to purchase or lease should defendant receive an offer from a third party.

Thus, regardless of Circle K's rights under ¶ 3 and the Addendum to negotiate and/or refuse extension terms before defendant marketed the properties, the language of the Addendum does not extinguish Circle K's rights and defendant's obligations under ¶ 17. Defendant's competing interpretation - that the Addendum modified and superseded ¶ 17 - would require Circle K to exercise its "exclusive first option to lease or purchase" even if defendant had not received a bona fide offer from a third party. Such an interpretation is contrary to the language of ¶ 17 and would render the entirety of ¶ 17 meaningless. See N. Pac. Ins. Co. v. Hamilton, 332 Or. 20, 22 P.3d 739 (2001) (a contract "must be viewed by its four corners and considered as a whole" and provisions "must be construed to determine if and how far one clause is modified, limited or controlled by others") (quoting Denton v. Int'l Health & Life, 270 Or. 444, 449-50, 528 P.2d 546 (1974)).[2]

Furthermore, the provisions of the Leases, including ¶ 17, were extended when the parties' subsequently modified and extended the lease terms. The first extension agreements explicitly provided that "all other conditions and covenants of said primary

---

[2]Defendant also argues that ¶ 17 applies to only purchase offers; however, this argument is contradicted by the plain language of ¶ 17.

Lease dated July 27, 1970, shall remain in full force and effect and are hereby ratified and confirmed." Wilson Decl., Ex. C, p. 2. The parties also executed and recorded a Memorandum of Lease Extension in connection with the first extension agreements that stated:  "The purpose of this Memorandum of Lease Extension is to give record notice of the Lease Extension and of the rights created thereby, all of which are hereby confirmed." Wilson Decl., Ex. E, p. 1.  Similarly, the second modification agreements provided that "[e]xcept as specifically amended hereby by, all other conditions and covenants of the Lease shall remain in full force and effect and are hereby ratified and confirmed." Wilson Decl., Ex. K, p. 2. Thus, Circle K's rights under ¶ 17 did not expire at the end of the original lease term.[3]

Accordingly, when defendant received a bona fide lease offer from a third-party lessee on November 8 or 9 and was inclined to accept it, defendant was required to notify Circle K of the offer and allow Circle K fifteen days to decide whether to lease the properties on the same terms or vacate the premises.

Based on the record before the court, Circle K has established a likelihood of success on the merits or - at minimum - has raised

---

[3]Further, the Memorandum of Lease Extension also specifically acknowledged that Circle K retained a "right of first refusal option."  Wilson Decl., Ex. E, p. 1.  Thus, even if Circle K's rights under ¶ 17 were modified by the Addendum, those rights were extended and Circle K exercised such rights by stating its intent to enter into renewal negotiations in February 2010.

serious questions regarding its rights under ¶ 17 of the Leases.

B.  Irreparable Injury and Balance of Hardships

Circle K must also show the likelihood of irreparable injury and that the balance of hardships tips in its favor.  I find that Circle K has made these showings.

If the preliminary injunction is not granted, Circle K will be forced to vacate two properties it has leased for forty years and will suffer the accompanying and potentially permanent loss of business and customers.  If the injunction is granted, Circle K has confirmed that it will pay defendant the  rental amounts offered by the third-party lessee for the duration of the preliminary injunction.  Further, the court will expedite resolution of this matter once it receives notice regarding Circle K's intent to accept the terms offered by the third-party lessee.  Thus, the balance of hardships tips in Circle K's favor, and Circle K has made the requisite showing for preliminary injunctive relief.

CONCLUSION

For these reasons and those articulated at the hearing, Circle K's request for preliminary injunction is GRANTED and defendant's Motion to Dissolve (doc. 11) is DENIED.

In lieu of a bond, Circle K shall continue to deposit rental monies in a trust or escrow account or as otherwise agreed by the parties for the duration of preliminary injunction or this action. On or before December 13, 2010, the parties shall submit a joint

11   - OPINION AND ORDER

status report indicating whether Circle K accepts the terms of the November 9, 2010 lease agreements, or whether the parties dispute the terms of Circle K's acceptance.

IT IS SO ORDERED.

Dated this ___ day of December, 2010.

Ann Aiken
United States District Judge

12   - OPINION AND ORDER