IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


CIRCLE K STORES, INC.,        )
a Texas corporation,          )
                              )
         Plaintiff,           )   Civ. No. 10-6389-AA
                              )
    v.                        )   OPINION AND ORDER
                              )
RICHARD L. ZILLMAN, trustee of )
the RICHARD L. ZILLMAN FAMILY )
TRUST; RICHARD L. ZILLMAN and )
CHERYL ZILLMAN, trustees of the )
RICHARD AND CHERYL ZILLMAN    )
REVOCABLE TRUST,              )
                              )
         Defendants.          )
_____)

AIKEN, Chief Judge:

     Plaintiff Circle K Stores, Inc. (Circle K) filed this

diversity action against defendants seeking declaratory and

injunctive relief and specific performance based on defendants'

breach of contract.  In the alternative, Circle K seeks damages

for breach of the duty of good faith and fair dealing.

Defendants now move for summary judgment on all of Circle K's

claims, and Circle K moves for partial summary judgment against

1 - OPINION AND ORDER

defendants with respect to Circle K's claim for breach of contract. Defendants' motion is DENIED. Circle K's motion is GRANTED in part and DENIED in part.

## BACKGROUND

Circle K is in the business of operating convenience stores and fuel stations throughout the United States. On November 27, 1970, Circle K and defendants' predecessors in interest entered into lease agreements (the "Lease") for two separate properties in Salem, Oregon. Under the Lease, Circle K became a tenant at the two properties, which are located at 4781 Liberty Road SE and 2904 12th Street SE in Salem, Oregon (the "Leased Premises"). Circle K operates store number 2701278 at the 4781 Liberty Road location ("Store 1278") and operated store number 2700411 at the 2904 12th Street location ("Store 411").

The original term under the Lease was 20 years, with the original lease term ending on November 26, 1990. The Lease also provided Circle K with a renewal/extension option at the end of the lease terms. Further, the Lease granted Circle K the "right of first refusal" with respect to renewing or extending the lease terms and with respect to leasing or purchasing the property if defendants received a higher offer from a third party. See Lease, ¶¶ 3, 17 and Addendum.

On March 21, 1991, Circle K and defendants entered into two agreements (one for each of the properties), each entitled Lease

2 - OPINION AND ORDER

Amendment and Extension Agreement ("First Extensions"). Among other items, the First Extensions changed the rent payable to the landlord and extended the terms of the Lease an additional ten years, through November 26, 2000. The First Extensions also granted Circle K options to renew the Lease for a period of five years each.

On January 20, 2000 and February 7, 2000, Circle K provided defendants written notification of its intent to exercise the first options under the First Extensions, which extended the Lease through November 26, 2005.

On March 8, 2001, Circle K and defendants entered into two agreements entitled Second Lease Amendment and Extension Agreement (collectively, the "Second Extensions"). The Second Extensions further modified the Lease.

On October 15, 2004 and October 27, 2004, Circle K provided defendants written notification of its intent to exercise the second options under the First Extensions, which extended the Lease through November 26, 2010. No additional extension option remained for Circle K to renew at the end of this lease term.

On February 3, 2010, Circle K sent defendants a letter requesting a five-year extension of the Lease, with two additional options to renew the Lease for five years after expiration of the new lease extension. At the time, Circle K was not aware of any effort by defendants to market or otherwise

3 - OPINION AND ORDER

replace Circle K as a tenant at the end of the lease term.
Defendants never responded to Circle K's letters.

On July 20, 2010, Circle K again sent its February 3, 2010
letters to defendants. Around the same time, defendants retained
a broker to market the Leased Premises.

Circle K representatives spoke with defendant Richard L.
Zillman on or around August 20, 2010 and reiterated Circle K's
intent "to exercise its right of first refusal on the Leases."
Circle K maintains that defendants refused to engage in any
meaningful negotiations with Circle K regarding extension of the
Lease or a new lease of the Leased Premises. Defendants dispute
that characterization.

In response to a demand from defendants' broker, Circle K
obtained independent broker price options for the Leased
Premises, which it provided to defendants' broker on October 20,
2010.

On November 10, 2010, defendants' broker rejected Circle K's
offers and stated:

    [Defendants have] received offers that are
    significantly higher than that made by Circle K and at
    this time, [defendants feel] a counter-proposal would
    be unproductive.

Wilson Decl., Ex. P, p. 3.

Later that same day, the defendants' broker rejected Circle
K's offers and stated:

4 - OPINION AND ORDER

The [Defendants are] not interested in discussing any
continuation of your occupancy at either location, and
expect that you will be vacating the spaces on November
26th, 2010 per the terms of your existing lease. There
is a new Lessee who may be interested in discussing
acquisition of the FF&E within the stores to save you
the expense and hassle of removing those items prior to
you vacating.

Wilson Decl., Ex. P, p. 2.

In response to defendants' disclosure that they had both

received other offers and entered leases with a new tenant, on

November 10, 2010, Circle K made a demand on its right of first

refusal and requested that defendants produce the third-party

leases for evaluation: "As per the terms of our lease, we have a

first right of refusal. Once this [offer from a third party] is

presented to us for evaluation we will either elect to exercise

or vacate." Circle K's Memo. in Support of Circle K's Cross-

Motion, p.10 (doc. 57).

On Tuesday, November 16, 2010, defendants disclosed to

Circle K two letters of intent, one for each of the properties.

Each letter of intent is dated November 8, 2010, and each letter

of intent appears to be signed by a third-party lessee. However,

when disclosing these letters of intent to Circle K, defendants

denied that Circle K had a right of first refusal:

These documents are being sent as an accommodation.
Lessor does not acknowledge that Circle K has a valid
First Right of Refusal. Any First Right that existed,
expired 6 months prior to the expiration of the
original lease term, in 1990.

Wilson Decl., Ex. Q, p. 1.

On November 17, 2010, Circle K attempted to exercise its alleged rights of first refusal by accepting the terms in the November 8, 2010 letters of intent offered by the third-party lessee.

On November 18, 2010, Circle K filed this action and sought a preliminary injunction and temporary restraining order, claiming it accepted the letters of intent and that defendants refused to negotiate in good faith. On November 22, 2010, the court granted the temporary restraining order. Also on November 22, 2010, defendants disclosed two partially-executed leases for the Leased Premises (the "Third-Party Leases").

On December 1, 2010, the court held a hearing on Circle K's motion for preliminary injunction. At the hearing, defendants produced fully-executed copies of the Third-Party Leases, which showed the leases were entered on November 9, 2010.

On December 6, 2010, the court found a likelihood of success regarding Circle K's rights of first refusal and granted the preliminary injunction, thereby allowing Circle K to continue renting the Leased Premises so long as it pays defendants the rental amounts offered under the Third-Party lease. Circle K was also granted until a certain date to accept or reject the Third-Party Leases. The parties were required to submit a joint status report by January 13, 2011 stating whether Circle accepted or rejected the Third-Party Leases.

6 - OPINION AND ORDER

On December 10, 2010, Circle K sent a letter to defendants

purporting to accept the Third-Party Lease as it related to Store

1278 located at the Liberty Road location, and rejecting the

Third-Party Lease as it related to the lease for Store 411

located at the 12th Street location. Specifically, Circle K

wrote, in relevant part:

Circle K accepts the general terms [sic] the lease
dated November 9, 2010 for the property located at 4781
Liberty Road, SE, Salem, OR (Circle K store #2701278).
As the Court noted during the December 1, 2010 hearing,
the leases presented to Circle K under its right of
first refusal do not account for the fact that Circle K
is a national, public-traded company. Therefore, Circle
K requests the following minor modifications and
clarifications prior to signing the lease:

1.    Personal Guaranty.  Given the fact that Circle K
      is a publicly traded company, provision of a
      personal guaranty would be inappropriate.
      Nevertheless, in order to provide the owner with
      the necessary security for the lease, Circle K is
      willing to provide a corporate guaranty, in the
      form attached hereto as Exhibit A.

2.    Trade Equipment.  Various sections of the lease
      address possession of equipment located on the
      premises, including, but not limited to section
      16.2.  These sections provide that specified
      equipment may revert to the owner under certain
      circumstances with an exclusion for specified
      "Trade Equipment."  Prior to signing the lease,
      Circle K will prepare a list of designated "Trade
      Equipment" for the location and requests that the
      list be attached to and incorporated in the lease
      document.

3.    Percentage Rent.  Typically, Circle K negotiates
      with landowners regarding the method for
      computation and payment of percentage rent.  As
      such, Circle K has established computer protocols
      and accounting practices to accommodate payment of
      percentage rent.  In order to facilitate Circle

7 - OPINION AND ORDER

> K's prompt and accurate payment of percentage rent
> under lease sections 3.1.2, 3.1.2.1, 3.1.3, 3.1.4
> and 3.1.5, Circle K requests that the owner accept
> payment according to the format set forth in the
> spreadsheet attached hereto as Exhibit B.  Circle
> K believes that this format accurately captures
> the percentage rents required under the lease and
> use of the format will not materially alter the
> lease terms.

4.  Lease Term and Commencement.  The November 9, 2010
    lease does not require the tenant's possession
    until 2011.  Given the fact that Circle K will
    continue as tenant from November 27, 2011 forward,
    Circle K requests that the parties modify the
    lease term referred to in sections 2.1 and 2.2 to
    coincide with the expiration of Circle K's
    previous lease (November 26, 2010) with a
    corresponding end to the lease term.

Circle K thus abandoned any interest in Store 411, and that lease

is no longer at issue.

On December 13, 2010, defendants sent Circle K a letter

stating that Circle K's purported acceptance was ineffective

because it contained additional and modified terms and,

therefore, did not comply with defendants' offer.  Consequently,

defendants rejected Circle K's purported acceptance of the Third-

Party Lease's terms.  In that same letter, defendants suggested

that all parties engage a qualified mediator to assist the

parties in resolving their issues.

Shortly thereafter, on December 21, 2010, defendants

received a new proposal from a new tenant offering to lease the

Liberty Road store for more money.  Defendants were unable to

pursue the offer due to the injunction entered by the court.

8 - OPINION AND ORDER

On December 29, 2010, Circle K sent defendants another
letter expressing its disagreement with defendants' assertion
that Circle K's acceptance was ineffective.  Circle K stated:

> To eliminate any further confusion, Circle K reiterates
> that it accepted the terms of the November 9, 2010
> lease for the Liberty Road location.  Please forward a
> complete copy of the lease for Circle K's signature.
> Circle K will sign the lease, provide the required list
> of Trade Equipment and sign a personal guaranty in the
> form attached to the November 9, 2010 lease.

On April 21, 2011, Circle K filed an Amended and
Supplemental Complaint seeking a declaration that: (1) the Lease
grants Circle K a right of first refusal; (2) defendants breached
the Lease by entering into the Third-Party Leases and failing to
present the Third-Party Leases to Circle K absent Court order;
(3) Circle K executed a timely, unconditional, valid acceptance
of the Third-Party Leases under Circle K's right of first
refusal; and (4) defendants breached the Circle K Lease by
failing to acknowledge Circle K's acceptance of the Third-Party
Lease terms.

Circle K continues to occupy the Liberty Road location as a
paying tenant under the terms of the Third-Party Lease in
accordance with the preliminary injunction.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R. Civ.

9 - OPINION AND ORDER

P. 56(a). Motions for partial summary judgment are evaluated using the same standard. Id. The Court's role is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). A dispute involving a material fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson 477 U.S. at 248. A "material fact" is one that has "the potential to affect the outcome of the suit under the applicable law." Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993). The materiality of a fact is determined by the substantive law governing the claim. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party has the burden of informing the court of the basis for its motion and demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Upon the moving party's meeting that burden, the nonmoving party must then go beyond the pleadings and identify facts which show a genuine issue of fact for trial. Celotex, 477 U.S. at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the

10 - OPINION AND ORDER

moving party; and (2) all inferences to be drawn from the
underlying facts must be viewed in the light most favorable to
the nonmoving party. T.W., 809 F.2d at 630.

A cross-motion for summary judgment requires the court to
apply the same standard as it does for an individual summary
judgment motion. Creech v. N.D.T. Indus., Inc., 815 F. Supp.
165, 166 (D.S.C. 1993). The court must therefore rule on each
motion independently. Creech, 815 F. Supp at 166-67. "The
granting of one motion does not necessarily warrant the denial of
the other motion, unless the parties base their motions on the
same legal theories and same set of material facts." Stewart v.
Dollar Federal Sav. and Loan Ass'n, 523 F. Supp. 218, 220. (S.D.
Ohio 1981) (citing Schlytter v. Baker, 580 F.2d 848, 849 (5th
Cir. 1978)).

## DISCUSSION

Defendants move for summary judgment on Circle K's claims for
breach of contract and breach of the covenant of good faith and
fair dealing. Circle K moves for partial summary judgment against
defendants with respect to Circle K's claim for breach of contract.
Because both Circle K and defendants move for summary judgment on
Circle K's claim for breach of contract, the court treats both
motions for summary judgment as arising from the same legal
theories and the same set of undisputed facts. The granting of one
party's motion, therefore, warrants the denial of the other party's

11 - OPINION AND ORDER

motion.

## I.  Breach of Contract

Circle K's breach of contract claim has two parts.  First, Circle K insists that the Lease obligates defendants to disclose to Circle K any offers to lease the properties that defendants received during the term of the Lease and to allow Circle K the right of first refusal.  Circle K argues that defendants failed to honor this right, thereby breaching the Lease.

Second, Circle K insists it accepted the third-party offer and that defendants' refusal to acknowledge this acceptance also constitutes a breach of the Lease.

### A. The Lease Grants Circle K a Right of First Refusal and Defendants' Failure to Honor this Right Constitutes a Breach of the Lease

Courts normally follow three steps when interpreting a contractual provision.  Yogman v. Parrott, 325 Or. 358, 361, 937 P.2d 1019 (1997).  However, at the summary judgment stage, the court need only complete step one: determine what the words of the contract say and whether the disputed provision is ambiguous. Yogman 325 Or. at 361; Milne v. Milne, 207 Or. App. 382, 388, 142 P.3d 475 (2006).  If the provision at issue is unambiguous, its construction is a matter of law for the court and summary judgment is appropriate.  May v. Chicago Ins. Co., 260 Or. 285, 292, 490 P.2d 150 (1971); Milne, 207 Or. at 388.  But, if the provision at issue is ambiguous, summary judgment must be denied.  Milne, 207

12 - OPINION AND ORDER

Or. at 388.

"Words or terms of a contract are ambiguous when they
reasonably can, in context, be given more than one meaning."
Yogman, 325 Or. at 363-64. In order to determine whether a
provision is ambiguous, the court looks to the text to determine
what the contract itself says. Id. at 361. Stated differently,
the court "looks at the four corners of [the] written contract, and
considers the contract as a whole with emphasis on the provision or
provisions in question." Id. (citing New Zealand Ins. v. Griffith
Rubber, 270 Or. 71, 75, 526 P.2d 567 (1974); Devereaux v.
Cockerline, 179 Or. 229, 240, 170 P.2d 727 (1946); Arment v.
Yamhill Cnty., 28 Or. 474, 479, 43 P. 653 (1896)). In addition to
examination of the text and context, the court may consider "the
circumstances underlying the formation of a contract to determine
whether a particular contractual provision is ambiguous." Batzer
Const., Inc. v. Boyer, 204 Or. App. 309, 317, 129 P.3d 773 (2006).

The crux of the parties' dispute is the meaning of three
paragraphs contained in the original 1970 Lease and an accompanying
Addendum. Circle K maintains that ¶ 17 of the Lease unequivocally
grants Circle K the exclusive "first option" to lease the
properties on the same terms as those contained in a bona fide
offer that defendants wish to accept. Based on the language of the
Lease, I agree.

In ¶ 17, the Lease specifically grants Circle K the

13 - OPINION AND ORDER

"exclusive" right to accept the terms of lease or purchase offers

received by defendants:

> 17. OPTIONS TO PURCHASE OR LEASE: If the Lessor, *at any time during the term of this Lease or any renewal or extension thereof receives a bona fide offer to . . . lease* (for a term to begin subsequent to the present term or any extension or renewal thereof) the demised premises and/or equipment and Lessor desires to accept said offer, Lessor agrees to give Lessee immediate notice in writing of such offer, setting forth name and address of the proposed purchaser or Lessee who has made the offer with a full disclosure of all terms and options thereof. *Lessee shall have the exclusive first option to purchase or lease the demised premises and/or equipment within fifteen (15) days after receipt of said notice on the same terms of any such proposal.* No sale, lease or transfer of title to said premises and/or equipment shall be binding on Lessee unless and until these requirements are fully complied with by Lessor.

Wilson Decl., Ex. A, p. 2 (emphasis added).

Notwithstanding the express language of ¶ 17, defendants

argue that an Addendum to the 1970 Lease modified and

essentially replaced ¶ 17, and thus any right of first refusal

held by Circle K expired six months before the end of the

first lease term in 1990. However, defendants' argument is

belied by the plain language of the Lease and the Addendum and

by the parties' subsequent extension of the Leases.

The Addendum relied on by defendants is incorporated by

reference into ¶ 3 of the Lease, a paragraph which discusses

renewal options at the end of the original lease term:

> 3. TERM AND RENEWAL OPTION: . . . Lessee shall have and is hereby granted a total of <u>See Addendum</u> successive option to extend the term of this lease for any period of time not exceeding five (5) years for each such option

14 - OPINION AND ORDER

upon the same covenants and conditions as are herein provided . . .

Rather than identify the number of successive renewal or extension options available to Circle K, the Addendum granted Circle K a "right of first refusal" to negotiate the renewal or extension of lease terms:

3. RENEWAL OPTIONS: Lessee shall have the right of first refusal in any future negotiating on the renting of the lease premises at the end of the original term of this lease, said right of first refusal to expire six months prior to the end of the lease term.

Wilson Decl., Ex. A, p. 4.

Notably, ¶ 17 of the Lease does *not* reference or incorporate the Addendum. Further, the Addendum is numbered "3" and labeled "RENEWAL OPTIONS," thus corresponding with ¶ 3, "TERM AND RENEWAL OPTION." Moreover, while the Addendum uses the language "right of first refusal" when referencing future renewal negotiations, ¶ 17 describes an "exclusive first option to purchase or lease" when and if defendants receive a bona fide offer from a third party. Thus, under the language of the Lease and the Addendum, the "right of first refusal" identified in the Addendum refers to Circle K's right to first negotiate and/or refuse a renewal or extension of the Lease, not the "first option" to purchase or lease should defendants receive an offer from a third party.

Therefore, regardless of Circle K's rights under ¶ 3 and the Addendum to negotiate and/or refuse extension terms before defendants marketed the properties, the language of the Addendum

15 - OPINION AND ORDER

does not extinguish Circle K's rights and defendants' obligations under ¶ 17.  Defendants' competing interpretation – that the Addendum modified and superseded ¶ 17 – would require Circle K to exercise its "exclusive first option to lease or purchase" even if defendants did not receive a bona fide offer from a third party. Such an interpretation is contrary to the language of ¶ 17 and would render the entirety of ¶ 17 meaningless.  See N. Pac. Ins. Co. v. Hamilton, 332 Or. 20, 22 P.3d 739 (2001) (a contract "must be viewed by its four corners and considered as a whole" and provisions "must be construed to determine if and how far one clause is modified, limited or controlled by others") (quoting Denton v. Int'l Health & Life, 270 Or. 444, 449-50, 528 P.2d 546 (1974)).[1]

Furthermore, the provisions of the Lease, including ¶ 17, were extended when the parties subsequently modified and extended the lease terms.  The first extension agreements explicitly provided that "all other conditions and covenants of said primary Lease dated July 27, 1970, shall remain in full force and effect and are hereby ratified and confirmed."  Wilson Decl., Ex. C, p. 2.  The parties also executed and recorded a Memorandum of Lease Extension in connection with the first extension agreements which stated: "The purpose of this Memorandum of Lease Extension is to give

---

[1] Defendants also argue that ¶ 17 applies to only purchase offers; however, this argument is contradicted by the plain language of ¶ 17.

16 - OPINION AND ORDER

record notice to the Lease Extension and of the rights created thereby, all of which are hereby confirmed." Wilson Decl., Ex. E, p. 1. Similarly, the second modification agreements provided that "[e]xcept as specifically amended hereby by [sic], all other conditions and covenants of the Lease shall remain in full force and effect and are hereby ratified and confirmed." Wilson Decl., Ex. K, p. 2. Thus, Circle K's rights under ¶ 17 did not expire at the end of the original lease term.[2]

Accordingly, when defendants received a bona fide lease offer from a third-party lessee on November 9, 2010 and was inclined to accept it, defendants were required to notify Circle K of the offer and allow Circle K fifteen days to decide whether to lease the properties on the same terms or vacate the premises. Defendants' failure to comply with ¶ 17 of the Lease constitutes a breach of the Lease, therefore Circle K's motion for partial summary judgment on this issue is granted.

### B. Whether Circle K Effectively Accepted the Terms of the Third-Party Lease is a Genuine Issue of Material Fact

The next issue is whether Circle K effectively accepted the Third-Party Lease as to the Liberty Road location. The crux of this dispute again involves ¶ 17 of the Lease, which specifically

---

[2] Further, the Memorandum of Lease Extension specifically acknowledged that Circle K retained a "right of first refusal option." Wilson Decl., Ex. E, p. 1. Thus, even if Circle K's rights under ¶ 17 were modified by the Addendum, those rights were extended and Circle K exercised such rights by stating its intent to enter into renewal negotiations in February 2010.

17 - OPINION AND ORDER

grants Circle K the "exclusive first option" to accept the terms of lease or purchase offers received by defendants "within fifteen (15) days after receipt of said notice on the same terms of any such proposal." Wilson Decl., Ex. A, p. 2. Circle K further maintains that its acceptance of the Third-Party Lease was timely, unequivocal, and binding. To support this assertion, Circle K relies on its letter of December 10, 2010, which stated that Circle K accepted the "general terms" of the Third-Party Lease.

Circle K insists it affirmatively and unequivocally accepted the terms of the Third-Party Lease, and the remaining paragraph of its letter seeks only to clarify four discrete issues relating to the Third-Party Lease. Circle K characterizes its clarifications as follows:

> First, Circle K sought to clarify acceptable security in lieu of a personal guaranty, due to its corporate structure.... Second, Circle K confirmed that it would provide a list of Trade Equipment as required by Section 16.2 of the Third-Party Lease.... Third, Circle K sought to clarify whether its corporate forms for reporting sales data used to calculate percentage rent would be acceptable to defendants.... Finally, Circle K sought to confirm the start date of the Third-Party Lease.

Circle K's Memo. in Support of Circle K's Cross-Motion, pp. 24-25 (doc. 57).

Circle K maintains that these clarifications do not represent changes and that its acceptance of the new lease was not conditioned on defendants' acceptance of Circle K's requests. To prove this, Circle K points to its letter of December 29,

18 - OPINION AND ORDER

2010, wherein it ultimately accepted the original terms of the Third-Party Lease.

Defendants, however, characterize the December 10, 2010 letter as a counter-offer to the terms of the Third-Party Lease, or as an attempt to renegotiate its terms. Defendants argue that Circle K qualified its acceptance by carefully limiting it to the "general terms" of the lease when it "was required to accept all of the terms" of the lease. Dfs.' Reply to Circle K's Memo. in Opp., p. 3 (doc. 58) (citing Stevens v. Foren, 154 Or. App. 52, 57, 959 P.2d 1008 (1998)). Defendants also emphasize Circle K's request that the "minor modifications and clarifications" be made "prior to signing the lease." Moreover, defendants argue, nothing in the letter states that Circle K will agree to the lease, even if defendants do not agree to the changes.

Beyond the form of the requests in the December 10, 2010 letter, defendants also take issue with their substance. Defendants insist that Circle K's modifications address terms that, if accepted by defendants, would not match the original terms of the Third-Party Lease and would therefore not comply with ¶ 17's requirement that Circle K accept "the *same* terms of any such proposal" (emphasis added). According to defendants, an acceptance "must be in the precise terms of the offer and if a new provision is suggested, it is considered a counteroffer." Dfs.' Reply to Circle K's Memo. in Opp., p. 10 (doc. 58) (citing Ellingsworth v.

Shannon, 161 Or. 106, 110, 88 P.2d 293 (1939)). For example, defendants argue that Circle K's desire to substitute a corporate guaranty for a personal guaranty constitutes a guaranty fundamentally different from the guaranty attached to the Third-Party Lease. Defendants also maintain that Circle K's request for a change in the percentage rent reporting format was a major change rather than a mere request for clarification. Defendants further argue that Circle K's request for clarification regarding the start date of the Third-Party Lease changed the lease terms.

Defendants acknowledge Circle K's eventual acceptance of the new lease in its December 29, 2010 letter, but maintains that the right's fifteen day period had passed, thereby rendering the acceptance untimely. Therefore, according to defendants, Circle K's letter of December 10, 2010 did not affirmatively accept all of the terms of the new lease and therefore constituted a counter-offer. As such, defendants insist that Circle K never properly accepted the terms of the Third-Party Lease.

In order for Circle K to have properly accepted the Third-Party Lease, its "acceptance must be positive, unconditional, unequivocal and unambiguous, and must not change, add to, or qualify the terms of the offer." Wagner v. Rainier Mfg. Co., 230 Or. 531, 538, 371 P.2d 74 (1962); see also Blakeslee v. Davoudi, 54 Or. App. 9, 15, 633 P.2d 857 (1981) (applying the Wagner rule to exercise of options). I find that whether Circle K's acceptance

20 - OPINION AND ORDER

meets these requirements ultimately is a genuine issue of material fact. For example, it would not be unreasonable for a jury to find that Circle K's December 10, 2010 letter constituted an affirmative acceptance with minor requests for clarification, as Circle K argues. A reasonable jury might also give weight to the fact that Circle K never refused to perform under the terms of the Third-Party Lease  In Stevens, for example, the Oregon Court of Appeals held that the optionee's acceptance of a third-party contract was not valid, and was in fact a rejection, because the optionee refused to complete  a requirement specifically included in the terms of the offer, and the optionee was required to "match all terms of the offer." Stevens, 154 Or. App. at 60. Here, a reasonable jury could find that nothing in Circle K's letter constitutes an outright refusal. Furthermore, the first paragraph, stating, "Circle K accepts...," could be construed to mean that the four paragraphs at issue are more like indicia of performance - demonstrating Circle K's willingness to perform - rather than an acceptance conditioned on defendants' acceptance of the requested changes.

On the other hand, it would also be reasonable for a jury to find that Circle K's letter ultimately constitutes a counter-offer or an acceptance conditioned on defendants' acceptance of the requested changes. Circle K accepted "the general terms" of the Third-Party Lease and requested "modifications and clarifications

21 - OPINION AND ORDER

*prior to signing the lease…*," potentially casting doubt on Circle K's purported unconditional acceptance of all of the terms. Finally, a jury may reasonably find that the requested clarifications and modifications were not minor, given the evidence presented by defendants. Dfs.' Reply to Circle K's Memo. in Opp., pp. 6-10 (doc. 58). If Circle K's requested changes qualify the offer, then the requested changes must be considered a counter-offer – not an acceptance. See C.R. Shaw Wholesale Co. v. Hackbarth, 102 Or. 80, 96, 201 P. 1066 (1921) ("The only condition to the offer which can be added in the acceptance is one which does not qualify the offer in legal effect."). However, these are factual issues not appropriately resolved by the court on summary judgment.

In sum, the effectiveness of Circle K's purported acceptance of the terms of the Third-Party Lease is a genuine issue of material fact and both parties' motions for summary judgment are denied as to this specific issue.

## II. Breach of Covenant of Good Faith and Fair Dealing

Defendants also move for summary judgment on Circle K's claim for breach of the covenant of good faith and fair dealing. All contracts contain an implied covenant of good faith and fair dealing. Uptown Heights Assoc. Ltd. P'ship v. Seafirst Corp., 320 Or. 638, 645, 891 P.2d 639 (1995). The covenant of good faith and fair dealing ensures that each party receives the

22 - OPINION AND ORDER

anticipated benefits of their bargain.  See Best v. U.S. Nat'l
Bank, 303 Or. 557, 563, 739 P.2d 554 (1987).  In determining
whether there has been a breach of this covenant, the court
evaluates a party's conduct in light of the reasonable
expectations of the parties.  Id.

        The success of defendants' motion depends on the court
finding that there is no right of first refusal to accept the
Third-Party Lease terms.  Because this court finds a valid right
of first refusal, defendants have not met their burden of
demonstrating the absence of a genuine issue of material fact.
Indeed, as Circle K notes, there are fact issues surrounding this
claim and the parties' reasonable expectations.  As Circle K has
shown that a genuine issue of material fact exists, defendants'
motion as to this claim is denied.

                            CONCLUSION

        For these reasons, defendants' Motion for Summary Judgment
(doc. 47) is DENIED, and Circle K's Cross-Motion for Partial
Summary Judgment (doc. 56) is GRANTED in part and DENIED in part.
IT IS SO ORDERED.

        Dated this  3/ST  day of October, 2011.


                            _____
                                     Ann Aiken
                            United States District Judge


23 - OPINION AND ORDER